**UNITED STATES of America, Plaintiff, Counter–Defendant,**

v.

**Randolph JENKS, Defendant, Counter–Plaintiff.**

Civ. No. 90–480 JP.

United States District Court.
D. New Mexico.

June 18, 1992.

John W. Zavitz, William L. Lutz, U.S. Attorney's Office, District of New Mexico, Albuquerque, N.M., Richard B. Stewart, U.S. Dept. of Justice, Land and Natural Resources, Washington, D.C., for U.S.

Robert M. Hall, Douglas W. Decker, Payne Law Firm, Albuquerque, N.M., Mitchel D. Platt, Platt, Hall & Lee, St. Johns, Ariz., William Perry Pendley, Todd S. Welch, Mountain State Legal Foundation, Denver, Colo., for Jenks.

## MEMORANDUM OPINION
## AND ORDER

PARKER, District Judge.

The subjects of this memorandum opinion and order are cross motions for summary judgment filed on December 20, 1991. This suit arises from defendant's refusal to comply with plaintiff's request that defendant "apply for and obtain a private road easement to document his right of access across lands within the National Forest System and to extinguish any claim of prior right which Jenks asserts." Memorandum in support of USA's motion for summary judgment at 6. Jenks has refused to apply for a legal right of access to the three roads in question on the premise that he has a preexisting legal right of access over each of these roads. Thus, argues Jenks, he does not have to apply for an easement from the government since these pre-existing access rights are preserved in all relevant statutes. Plaintiff recognizes that Jenks has a right of access to his ranches, but takes the position that the government has the right, and moreover the obligation, to regulate Jenks' access rights. After careful consideration of the pleadings, facts and law, and being other-

wise fully advised in these matters, I have decided that plaintiff's motion for summary judgment should be granted and defendant's motion for summary judgment should be denied.

## BACKGROUND

Jenks is the owner of three ranches located in Catron County, New Mexico within the Apache National Forest. These ranches are named the Centerfire Bog Ranch, the Double J. Ranch, and the Patruff Ranch. The lands which comprise the ranches were patented by the United States to defendant Jenks' predecessors in interest. Because the ranches are surrounded by National Forest lands, i.e. they are "inholdings," Jenks must cross National Forest lands in order to access his ranches. The Centerfire Bog Ranch has two means of access; one services the northern portion ("northern access") and the other services the southern portion ("Centerfire Bog Road"). The Double J. Ranch and Patruff Ranch each have only one means of access which are referred to as the "Double J. Road" and the "Patruff Road" respectively.

In the early 1980's, the Forest Service contacted Jenks and offered to provide Jenks with a legal right of access across the roads through the execution of a private road easement with respect to each road so that Jenks may legally continue to use the roads. The easements would impose statutory conditions which regulate the use of the roads and prevent harm to National Forest Service lands such as compliance with public safety, health and environmental laws, traffic control regulations if the inholding land is developed for residential purposes, notice of transfer of ownership of the inholding, approval of plans to construct and reconstruct the roads, maintenance of the roads, indemnification for losses to the government in accordance with applicable laws or other claims arising out of the inholder's use of the roads including fire suppression costs, and termination provisions in the event the roads become public roads. Additionally, the government requires that Jenks pay a fee for such access rights based on the fair market value of the right acquired as determined by appraisal. The government would charge Jenks a total fee of $78 a year for all three easements. Jenks states that he would not have purchased the ranches, or he would have done so at a substantially reduced price, if he had known at the time of purchase that the Forest Service could charge him a fee to use the roads or impose any restrictions on his road use.

## DISCUSSION

Plaintiff seeks to require defendant to apply for and obtain an easement pursuant to the Alaska National Interest Lands Conservation Act of 1980 ("ANILCA"), 16 U.S.C. §§ 3101 *et seq.*, which provides in part:

> Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure the owner reasonable use and enjoyment thereof: Provided, that such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System.

16 U.S.C. § 3210(a).[1] Plaintiff recognizes that Jenks has a right of access across National Forest System lands as a private

---

1. The Secretary has promulgated regulations governing access under ANILCA. *See* 56 F.R. 27410 (June 14, 1991) now at 36 C.F.R. Part 251, Subpart D (1991). The regulations require the inholder to apply for an easement, 36 C.F.R. § 112, to be issued an instrument of authorization, 36 C.F.R. § 251.113, and impose certain conditions to regulate use of such roads and to protect Federal lands and resources, 36 C.F.R. § 251.114, including the requirement of paying a fee for such access rights based on fair market value of the right acquired as determined by appraisal. 36 C.F.R. § 251.114(b) and 251.57. Additionally, the regulations for ANILCA recognize that if an inholder has a right of access established under R.S. 2477 such right is an outstanding right not subject to the requirements of the regulations. 36 C.F.R. § 215.-110(b).

inholder.[2]  However, plaintiff also states that this section of ANILCA specifically provides that such access is "subject to such terms and conditions as the Secretary of Agriculture may prescribe" and requires the inholder to "comply with rules and regulations applicable to ingress and egress to or from the National Forest System." According to the legislative history of ANILCA, Congress intended that "such owners had the right of access to their lands subject to reasonable regulation by ... the Secretary of Agriculture in the case of national forest ... under the Federal Land Policy and Management Act of 1976 ['FLPMA']."  1980 U.S.Code & Admin. News at 5254.

The Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701 et seq., provides the Secretary with the authority "... to grant, issue, or renew rights of way over [Forest Service lands] for ... roads, trails [and] highways." 43 U.S.C. § 1761(a).  FLPMA further provides:

Rights-of-way shall be granted, issued, or renewed pursuant to this subchapter under such regulations or stipulations, consistent with the provisions of this subchapter or any other applicable law, and shall also be subject to such terms and conditions as the Secretary concerned may prescribe regarding extent, duration, survey, location, construction, maintenance, transfer or assignment, and termination.

43 U.S.C. § 1764(c).[3]  Furthermore, FLPMA requires the holder of a right-of-way to pay an annual fee in accordance with the fair market value of the right-of-way, 43 U.S.C. § 1764(g), and requires that each right-of-way conform to certain environmental, health, safety and other regulations.  43 U.S.C. § 1765.  Finally, FLPMA contained a savings provision which stated: "Nothing in this Act, or in any amendment made by this Act, shall be construed as terminating any valid lease, permit, patent, right-of-way, or other land use right or authorization existing on the date of approval of this Act." § 701 of P.L. 94–579, 43 U.S.C. § 1701(a).

Jenks argues that he has legal rights of access that predate FLPMA and ANILCA and are preserved by the savings provision in FLPMA.  Jenks argues that he has rights of access to his inholdings (1) under Revised Statute 2477, 43 U.S.C. § 932; (2) due to preexisting easements over each of the roads; and (3) under the Organic Act of 1897, codified as 16 U.S.C. § 478 et seq.

R.S. 2477 provides, "The right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted."[4]  Whether the roads have been established under the provisions of R.S. 2477 is a question of New Mexico law.  Sierra Club v. Hodel, 675 F.Supp. 594, 604 (D.Utah 1987); Wilkenson v. Dept. of the Interior, 634 F.Supp. 1265, 1272 (D.Colo.1986).  The New Mexico courts have interpreted R.S. 2477 to be an offer by the United States to dedicate unreserved public lands for the construction of public roads.  Lovelace v. Hightower, 50 N.M. 50, 54 168 P.2d 864 (1946); Wilson v. Williams, 43 N.M. 173, 177, 87 P.2d 683 (1939).[5]  Upon acceptance by the duly authorized public official or by the public

---

**2.** ANILCA applies to all National Forest System lands, not just those in Alaska. Montana Wilderness Asso. etc. v. United States Forest Service, 655 F.2d 951 (9th Cir.1981), cert. denied 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).

**3.** The Secretary of Agriculture promulgated regulations concerning access rights to National Forest system lands under FLPMA in 1980. See 45 F.R. 38327 (June 6, 1980), 36 C.F.R. Part 251, Subpart B (1990).

**4.** This statute, enacted in 1866 and later codified as 43 U.S.C. § 932 was repealed in 1976 by FLPMA, P.L. 94–579, Title VII, § 706(a), Oct. 21, 1976, 90 Stat. 2793.

**5.** See also United States v. Dunn, 478 F.2d 443, 445, n. 2 (9th Cir.1973):

Suffice to say that [R.S. 2477] was passed to protect persons who have already encroached upon the public domain without authorization but who have been allowed to remain there with the knowledge and acquiescence of the government and who should not in conscience be deemed trespassers.  It was not intended to grant rights, but instead to give legitimacy to an existing status otherwise indefensible.  That such is its purpose is clear.

through use, the right-of-way became effective unless superior adverse rights had accrued or the lands were no longer public lands at the time of acceptance. *Frank A. Hubbell Co. v. Gutierrez*, 37 N.M. 309, 311, 22 P.2d 225 (1933).

■ Plaintiff argues that each of the roads in question was developed after the reservation of the forest, that is, at a time when the lands were no longer public lands, and thus, Jenks and his predecessors had no prior rights under R.S. 2477 which survived the enactment of FLPMA. The Act of March 3, 1891, Chap. 561, § 24 gave the President of the United States the authority to reserve lands for forest purposes. Such reservation severs the reserved lands from the public domain and withdraws them from public lands. *Scott v. Carew*, 196 U.S. 100, 25 S.Ct. 193, 49 L.Ed. 403 (1905); *see also Ute Indian Tribe v. State of Utah*, 716 F.2d 1298, 1305 (10th Cir.), *cert. denied* 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1983) (creation of an Indian reservation or a forest or other particular use from public land removes it from the public domain).

■ Plaintiff and defendant agree that the land surrounding all three ranches was made part of the Gila River Forest Reserve by presidential proclamation in 1899. *See* Joint Stipulation of Facts ("JSOF") Nos. 7, 43, 101. Plaintiff and defendant also agree that the Centerfire Bog Road was developed between 1906 and 1915, JSOF Nos. 7 and 16, the Double J. Road was developed between 1934 and 1935, JSOF No. 69, and

the Patruff Road was developed between 1906 and 1915, JSOF No. 106. Thus, all three roads were developed after the reservation of the Gila Forest Reserve. However, defendant argues that because there were other public roads which crossed the Centerfire Bog Ranch and the Patruff Ranch before the reservation of the National Forest, the new roads formed after the reservation still fall under R.S. 2477.[6] This argument is not well taken and I conclude that all three roads which were developed after the reservation of the Gila Forest Reserve are not the subject of prior access rights pursuant to R.S. 2477.

■ Defendant's main argument is that he does not have to apply for an easement under ANILCA because easements by necessity or implied easements were created when the United States granted the land to Jenks' predecessors. Defendant also argues that he has a right of access to his lands under the Organic Act of June 4, 1897, now codified as 16 U.S.C. § 473 *et seq.*[7] Without undergoing a lengthy analysis of the elements of certain easements and whether such easements are proper against the federal government in this situation, or the effect of the Organic Act on the roads in question, I simply conclude that even if I am to agree with defendant that there are preexisting easements for each of the roads or that the Organic Act provides a right of access to defendant's ranches, plaintiff can still regulate these access rights pursuant to ANILCA and FLPMA. *See Montana Wilderness Ass'n*

---

**6.** It is unclear whether defendant raised the R.S. 2477 argument with regard to the Double J. Road since there does not seem to have been any road leading to the Double J. Ranch which preexisted the Gila Forest Reserve.

**7.** 16 U.S.C. § 478 of the Organic Act provides: Nothing ... [herein] ... shall be construed as prohibiting the egress or ingress of actual settlers residing within the boundaries of national forests, or from crossing the same to and from their property or homes; and such wagon roads and other improvements may be constructed thereon as may be necessary to reach their homes and to utilize their property under such rules and regulations as may be prescribed by the Secretary of Agriculture. Nor shall anything herein prohibit any person from entering upon such national forests for

all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof. Such persons must comply with the rules and regulations covering such national forests.

The Act was passed in response to President Cleveland's February 22, 1897 decision to place approximately twenty million acres of public land in forest reserves. *Montana Wilderness Ass'n v. United States Forest Service*, 496 F.Supp. 880, 888 (D.C.Mont.1980). "A review of the history of the Act shows that one reason Congress passed the Act was to make clear that preexisting access rights of owners of lands surrounded by federal lands were not to be impaired by the establishment of the national forest system." *Id.*

*v. United States Forest Service*, 496 F.Supp. 880 (D.C.Mont.1980) which, after finding that a railroad company had access to its property surrounded by federal land by way of necessity, implication, and under the Organic Act, concluded:

> For all of the reasons stated above the court holds that [the railroad company] does have a right of access to its property across federal lands. The exercise of that right is, of course, not absolute. Under the Constitution, Congress has the authority and responsibility to manage federal land. U.S. Const. Art. IV, § 3, cl. 2. Congress has by statute delegated this authority to agencies such as the Forest Service, e.g., the Federal Land Policy and Management Act, 43 U.S.C. § 1701 *et seq.* ... Thus, although [the railroad company] must be allowed access to its property, the United States may regulate that access under statutes such as the Federal Land Policy and Management Act.

496 F.Supp. at 889 (cites omitted). *See also Utah v. Andrus*, 486 F.Supp. 995 (D.Utah 1979) (valid existing rights of access cannot be taken under FLPMA but can be regulated since Congress has the constitutional authority and responsibility to manage federal land).

■ Defendant seems to concede that, to a certain extent, the Forest Service may restrict an inholder's use of an easement under FLPMA so long as such restrictions are lawful, reasonable, and do not infringe on the dominant estate owner's property rights. Defendant's response to plaintiff's motion for summary judgment at 13–20. Defendant specifically argues, without citing any authority, that under the Organic Act, plaintiff may only regulate speed limits, traffic laws, and weight limits and that anything more is a violation of his property rights. Defendant further argues that paragraphs B, C, D, I, J, and 6 of the FLPMA Easement deny defendant his property rights and thus, cannot be lawfully applied since these paragraphs (1) impose a fee; (2) make use of the easements

conditional; (3) allow the Forest service to terminate the easements; and (4) make the transfer of the easements discretionary. Contrary to defendant's contentions, I find that these regulations are reasonable and do not unlawfully infringe on defendant's property rights. *See* 43 U.S.C. § 1765(b) which grants the Forest Service broad regulatory powers over right-of-ways through federal land. Moreover, the power of the Secretary of Agriculture under the 1897 Organic Act to charge a reasonable fee has been specifically recognized. *United States v. Grimaud*, 220 U.S. 506, 521–522, 31 S.Ct. 480, 484–485, 55 L.Ed. 563 (1911); *Pankey Land & Cattle Co. v. Hardin*, 427 F.2d 43 (10th Cir.1970). Furthermore, the charging of a fee has been found to be regulatorily permissible in FLPMA itself, *see* 43 U.S.C. § 1764(g), and nothing in ANILCA prohibits such a fee.[8]

■ Finally, defendant argues that plaintiff is estopped from denying defendant free, unrestricted access over the roads since even if plaintiff could regulate defendant's access rights, plaintiff has failed to do so thus far and cannot suddenly start now. However, "the fact that ... regulation[s] have been promulgated many years after the enactment of their statutory authority does not destroy the Congressional authorization given. The failure of an executive agency to act does not forfeit or surrender governmental property or rights." *United States v. Weiss*, 642 F.2d 296, 298–299 (9th Cir.1981). *See also United States v. California*, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947); *Light v. United States*, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570 (1911).

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED.

---

**8.** The regulations implementing FLPMA and ANILCA both provide for a reasonable administrative fee. *See* 36 C.F.R. § 251.57 and 36 C.F.R. § 251.114(b).