**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Counter-Defendant-
Appellee,

v.

RANDOLPH JENKS,

    Defendant-Counter-Claimant-
Appellant.

No. 96-2106

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-90-480-JP)

---

William B. Lazarus, Department of Justice, Washington, D.C. (Lois J. Schiffer, Assistant Attorney General and Robert L. Klarquist, Department of Justice, Washington, D.C., and John W. Zavitz, Assistant United States Attorney, Albuquerque, New Mexico, with him on the brief), for Plaintiff-Counter-Defendant-Appellee.

Steven J. Lechner (William Perry Pendley with him on the brief), of Mountain States Legal Foundation, Denver, Colorado, for Defendant-Counter-Claimant-Appellant.

---

Before PORFILIO, ANDERSON, and BALDOCK, Circuit Judges.

---

BALDOCK, Circuit Judge.

Defendant Randolph Jenks owns three ranches in Catron County, New Mexico--Centerfire Bog Ranch, Double J. Ranch, and Patruff Ranch. All three ranches are "inholdings" in that they are encompassed within the Apache National Forest and Gila River Forest Reserve. Consequently, Jenks must cross federal lands to reach each of his three ranches. Jenks may reach Centerfire Bog Ranch by Centerfire Bog Road, as well as by a northern access road in good weather. His access to Double J. Ranch and Patruff Ranch, however, is limited via Double J. Road and Patruff Road, respectively.

I.

Problems arose over a decade ago when the government told Defendant that he had to apply for and obtain "special use permits" or "private road easements" granting him access over the Centerfire Bog, Double J., and Patruff Roads, pursuant to the Alaska National Interest Lands Conservations Act of 1980 (ANILCA), 16 U.S.C. §§ 3101-3233. Section 3210(a) of ANILCA provides:

> Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: *Provided*, That such owner comply with rules and regulations applicable to ingress and egress to or from the National Forest System.

16 U.S.C. § 3210(a). Jenks, however, refused to comply with the government's demands. The government then instituted this lawsuit to (1) quiet title in the three roads, (2) enjoin Defendant's use of the access roads without proper authorization, and (3) compel

2

Defendant's compliance with ANILCA. Defendant counterclaimed to quiet title in himself, alleging preexisting patent and common law rights of access to his ranches via the roads. That was in the spring of 1990.

On cross motions for summary judgment, Fed. R. Civ. P. 56, and the parties' joint stipulation of facts, the district court held that even assuming Defendant had some preexisting legal right of access over the roads, the government could still impose reasonable rules and regulations upon that access pursuant to ANILCA and the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701-1784. United States v. Jenks, 804 F. Supp. 232, 236 (D.N.M. 1992), reversed in part 22 F.3d 1513 (10th Cir. 1994).[1] The district court further held that the conditions contained in the government's proposed special use permits, which, among other things, regulated the use of the roads and required payment of a user's fee, were reasonable. Jenks, 804 F. Supp. at 237.

The district court reasoned that "[a]ccording to the legislative history of ANILCA, Congress intended that . . . [inholders] 'had the right of access to their lands subject to reasonable regulation by the Secretary of Agriculture in the case of national forests under the [FLPMA].'" Jenks, 804 F. Supp. at 235 (internal ellipses omitted) (quoting S. Rep. No. 96-413 at 310, reprinted in 1980 U.S.C.C.A.N. 5070, 5254). Section 1761(a) of the

---

[1] The history leading to the enactment of ANILCA and the FLPMA is set forth in United States v. Jenks, 22 F.3d 1513, 1515-1516 (10th Cir. 1994) (Jenks I).

FLPMA provides that the "Secretary of Agriculture, with respect to lands within the National Forest System . . . [is] authorized to grant, issue, or renew rights of way over, upon, under, or through such lands . . . ." Id. § 1761(a). Section 1764(c) of the FLPMA further provides:

> Rights-of-way shall be granted, issued, or renewed pursuant to this subchapter under such regulations or stipulations, consistent with the provisions of this subchapter or any other applicable law, and shall also be subject to the terms and conditions as the Secretary concerned may prescribe regarding extent, duration, survey, location, construction, maintenance, transfer or assignment, and termination.

Id. § 1764(c). Accordingly, the district court entered summary judgment in favor of the government and enjoined Defendant's use of the access roads without proper authorization. Defendant appealed.

In United States v. Jenks, 22 F.3d 1513 (10th Cir. 1994) (Jenks I), we affirmed in part, modified in part, vacated in part, and reversed in part, the decision of the district court. In Jenks I, the parties agreed that Defendant had rights of access over the three roads. The parties disagreed, however, as to the source and extent of those access rights. Defendant continued to refuse to apply for special use permits, claiming that his preexisting patent and common law rights exempted him from ANILCA-authorized procedures. We disagreed with Defendant, and held that "regardless of Defendant's patent or common law rights, he must apply for a special use permit as provided for in 36 C.F.R. § 251.112(a)," which requires an inholder to apply for access across national forest lands. Jenks, 22 F.3d at 1517-18.

4

While we agreed with the district court that Defendant must apply for special use permits, we concluded that the court failed to give Defendant's patent and common law claims proper consideration. In reaching this conclusion, we relied on 36 C.F.R. § 251.114(f)(1), which requires the officer authorizing a special use permit to ensure that the inholder "has demonstrated a lack of any existing rights . . . of access available by deed or under State or common law." Thus, the permit process expressly required a determination of Defendant's patent and common law rights of access.

Because under § 251.114(f)(1), the government might not legitimately be able to require special use permits if Defendant could demonstrate preexisting rights of access, we also concluded that the district court's order enjoining Defendant's use of the roads until he obtained use permits was improper. We therefore modified the district court's injunction and enjoined Defendant's use of the access roads only until he applied for special use permits as required by 36 C.F.R. § 251.112(a).

Finally, we concluded in Jenks I that the district court's finding that the terms of the special use permits were reasonable was rendered moot by the government's change of position on appeal. The government's position before the district court was that the conditions for issuance of the permits to Defendant were non-negotiable. On appeal, however, the government informed us that the special use permit presented to Defendant "was merely a proposal and was subject to negotiation and that there was no indication that this permit, unamended, was going to be the permit for Defendant." Jenks, 22 F.3d at

5

1520 (internal quotations, ellipses, and brackets omitted). Accordingly, we vacated the district court's finding that the terms of the proposed permits were reasonable.

Following Jenks I, Defendant applied for special use permits over the Centerfire Bog, Double J., and Patruff Roads. The government, however, offered Defendant special use permits only under the terms of its original proposal, thus again changing its position as to the negotiability of the permits' conditions. The Deputy Regional Forester upheld the government's position. The parties again filed cross motions for summary judgment in the district court, and the government again prevailed. The district court rejected Defendant's claim to preexisting patent and common law rights of access to his ranches, again held that the conditions contained in the proposed special use permits were reasonable, and again enjoined Defendant's use of the access roads. Defendant again appealed. Our jurisdiction arises under 28 U.S.C. § 1291. We review a grant of summary judgment de novo. Mesa Oil, Inc. v. Insurance Co. of North America, 123 F.3d 1333, 1336 (10th Cir. 1997).

## II.

Before addressing the merits of Defendant's appeal, we initially note our agreement with the district court's statement on remand that "[t]he United States' flip-flopping of its position relating to the negotiability of the permit terms has resulted in an enormous waste of judicial resources." United States v. Jenks, No. Civ-90-480, unpublished order at 3 (D.N.M., filed Feb. 12, 1996). The government's waffling caused

the district court to rule a second time on a question which we would have resolved in Jenks I absent the government's misrepresentations. Moreover, the government's inability to take a firm but fair stand in dealing with Defendant for whatever reason tends only to erode confidence in its decision-making process, and undermine the perceived legitimacy of its ultimate decision.

Seemingly unaffected by the district court's displeasure or this court's growing impatience, the government now tells us not only that the district court's finding that the terms of the special use permits were reasonable is moot, but also that the government's entire complaint regarding Defendant's use of the access roads is moot. Thus, the government asks us to (1) again vacate that portion of the district court's order on remand addressing the reasonableness of the proposed permits' conditions, (2) dissolve the district court's injunction prohibiting Defendant's use of the access roads, and (3) order the government's complaint dismissed without prejudice. This all comes about because the government granted thirty-year public road easements to Catron County, New Mexico, for use of the three access roads on the same day Defendant filed his notice of appeal from the district court's order on remand. Thus, Defendant may for the time being use the three roads to access his ranches free of any conditions or fees whatsoever.

Defendant agrees that the government's claims are moot, and we are constrained to agree as well. When claims become moot while an appeal is pending through circumstances attributable to one of the parties, in this case the government, it is our duty

7

to determine whether vacatur is appropriate based on the particular circumstances. McClendon v. City of Albuquerque, 100 F.3d 863, 868 (10th Cir. 1996). Because the government prevailed below on its claims that the conditions contained in the proposed special use permits were reasonable and Defendant should be enjoined from using the access roads until he obtained the requisite permits, and then caused those issues to become moot, effectively barring appellate review, we cannot permit the district court's decision on those issues to stand. As the Supreme Court explained in U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 25 (1994), a party unable to seek review on the merits of an adverse ruling because of the unilateral action of the prevailing party, "ought not in fairness be forced to acquiesce in the judgment." Vacating the district court's finding that the terms of the special use permits were reasonable, dissolving its injunction prohibiting the Defendant's use of the access roads, and ordering it to dismiss the government's complaint without prejudice will allow, if necessary, future relitigation of the government's claims, and eliminate a decision against Defendant, which is unreviewable due to the government's actions.[2]

III.

---

[2] To avoid confusion, we expressly note that our decision in Jenks I, 22 F.3d at 1513, is not affected by our present decision to order the government's complaint dismissed as moot. Jenks I thus remains binding law.

But the controversy does not there end. Both parties agree that Defendant's counterclaim against the government remains viable, and we are of a like opinion. Defendant seeks to quiet title to the access roads pursuant to 28 U.S.C. § 2409a(a), which provides in relevant part: "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest . . . ." Defendant's action under § 2409a(a), however, is subject to the twelve year statute of limitations contained in subsection (g):

> Any civil action under this section . . . shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessors in interest knew or should have known of the claim of the United States.

Id. § 2409a(g). Defendant's claims of preexisting patent and common law rights of access over the roads are ripe for decision under § 2409a(a) because both Defendant and the government plainly claim an interest in those roads. See H.R. 92-1559 (1972), reprinted in 1972 U.S.C.C.A.N. 4547, 4552 (indicating that Congress intended easements to be included in real property rights adjudicated in a quiet title action under § 2409a). If we were to wait until the public road easements to Catron County lapsed or otherwise terminated before addressing Defendant's claims, those claims might then be time-barred under § 2409a(g). Accordingly, we proceed to the merits of Defendant's claims.

Defendant claims a right of access over the Centerfire Bog, Double J., and Patruff Roads free from government interference under three theories: (1) easement by necessity,

9

(2) easement by implication, and (3) easement by express grant. The district court rejected each of Defendant's three theories. The court first ruled that because ANILCA and the FLPMA gave Defendant statutory rights of access over the roads, the "necessity" required to create easements by necessity did not exist. The court next ruled that those same statutory rights of access indicated that the government did not intend to grant Defendant's predecessors in title easements by implication for use of the access roads. Finally, the court ruled that the patents which the government granted to Defendant's predecessors in title "with the appurtenances thereof" did not convey access easements over the roads. We consider each of the district court's three rulings in turn.

A.

Where a landowner conveys to another an inner portion of land and retains the rest, the common law presumes that the grantee has a right to pass over the retained property if such passage is necessary to reach the granted property. See Leo Sheep Co. v. United States, 440 U.S. 668, 679 (1979). This right is known as an implied easement by necessity, and is founded in a public policy favoring utilization of land. See generally 4 Richard R. Powell, Powell on Real Property § 34.07 (rev. ed., 1997). As we stated in Kinscherff v. United States, 586 F.2d 159, 161 (10th Cir. 1978), a case in which landowners claimed an easement by necessity over government lands: "The scope and extent of the right of access depends upon what must, under the circumstances, be attributable to the grantor either by implication of intent or by operation of law founded in

10

a public policy favoring land utilization." (internal quotations and ellipses omitted). Whether Defendant's predecessors in title received easements by necessity when they took title to the ranches from the government, however, is of little import at this point. This is because "[e]asements by necessity have an implied purpose to make possible the utilization of the dominant land, and such easements expire as soon as the necessity no longer exists." 4 Powell, supra, § 34.19 at 34-240, 241.

Defendant simply does not need an easement by necessity to access his ranches. Presently, the public road easements which the government granted to Catron County in the Centerfire Bog, Double J., and Patruff Roads give Defendant an unconditional right of access to his ranches. If and after those easements lapse or terminate, Defendant in all likelihood will still have a statutory right of access under ANILCA and FLPMA, or some other federal statutory scheme, albeit subject to reasonable government regulation. For instance, ANILCA presently states that "[n]otwithstanding any other provision of law . . . the Secretary shall provide . . . access to nonfederally owned land within the boundaries of the National Forest System . . . ." 16 U.S.C. § 3210(a) (emphasis added). If both the public road easements and statutory rights of access cease to exist, however, Defendant might successfully claim easements by necessity See 4 Powell, supra, § 34.07 at 34-76 (better view is that public policy favoring land utilization applies where the original unity of ownership was in the government, as well as where such ownership was in a private individual); but see Rights-of-Way Across Nat'l Forests, 43 Op. Att'y Gen. 243, 255

11

(1980) (common law doctrine of easement by necessity does not apply to federal lands). But we need not now decide that hypothetical and unlikely situation.[3]

## B.

Defendant also asserts that the land patents the government granted his predecessors in title contained implied easements for use of the access roads. According to Defendant, the language of the Homestead Act of 1862, which granted 160 acres of land to individuals who agreed to live on and make improvements to the land for five years, "supports the conclusion that Congress intended to grant an implied easement for access to lands patented thereunder." See Act of May 20, 1862, ch. 75, 12 Stat. 392 (codified at 43 U.S.C. §§ 161-284) (repealed 1976). We disagree.

To be sure, throughout our nation's western expansion, a right of access across government lands was implied if necessary to effectuate the purpose for which an inholding was granted. But it does not follow that the right of access accompanying the grant of an inholding was necessarily a property interest known as an implied easement. We implicitly rejected such a proposition in Jenks I when we stated: "Although the Homestead Act made no provision for access to and from granted land over the retained

_____

[3] The district court also found that Defendant did not have an easement by necessity in the Centerfire Bog Road because he could access the Centerfire Bog Ranch, albeit with difficulty, via a northern access road with a four-wheel drive vehicle. Because Defendant presently has a right to access the Centerfire Bog Ranch via the Centerfire Bog Road, we need not decide whether absent that right the northern access road might be sufficient to overcome Defendant's claim to an easement by necessity in the Centerfire Bog Road.

12

lands of the United States, it was presumed that 'an implied license' to use public lands would provide settlers with unimpeded access to their property." Jenks, 22 F.3d at 1515. See Buford v. Houtz, 133 U.S. 320, 326 (1890) (private landowners have an implied license, growing out of custom, to use public lands where lands are left open and no act of government forbids their use).

Under the Constitution, Congress has the authority and responsibility to manage federal lands. U.S. Const. art. IV, § 3 ("Congress shall have power to . . . make all needful Rules and Regulations respecting . . . Property belonging to the United States . . . ."). Nothing in the Homestead Act of 1862 suggests that Congress intended to abrogate its right to regulate access over roads located on federal lands. Moreover, our conclusion that Congress maintained the right as holder of the servient tenement to impose reasonable rules and regulations upon the use of access roads, as it has done through the enactment of ANILCA and the FLPMA, is consistent with the principle that "[i]n a public grant nothing passes by implication, and unless the grant is explicit with regard to the property conveyed, a construction will be adopted which favors the sovereign." Abrecht v. United States, 831 F.2d 196, 198 (10th Cir. 1987). Thus, we reject Defendant's argument that he has implied easements for use of the access roads free from reasonable government regulation. This is not to say, however, that the government's imposition of onerous requirements on inholders seeking access rights which are unrelated or disproportionate to any expected public benefit will never

13

constitute arbitrary and capricious conduct in violation of law.  See Rights-of-Way Across Nat'l Forests, 42 Op. Att'y Gen. 127, 147 (1962).

C.

Finally, Defendant argues that the patents of his predecessors in title expressly grant him easements in the access roads because they grant "said tract of Land with the appurtenances thereof."  Defendant states the general rule that when land is granted with "appurtenances," the grantee receives that which is necessary for the use and enjoyment of the land, see Restatement of Property § 453 (1944), and asks what could be more important for the use and enjoyment of land than an easement for access.

Although difficult to discern from the parties' convoluted joint stipulation of facts, the Patruff Road may have existed at the time Defendant's predecessors took title to the Patruff Ranch from the government.   The Centerfire Bog and Double J. Roads, however, do not appear to have existed, at least in their present form, at the time Defendant's predecessors took title from the government.  We fail to see how Defendant's predecessors in title received express access easements over roads which did not exist at the time of the government's conveyance.

Nevertheless, even assuming all three access roads existed at the time of the government's patents, we do not believe the language "with the appurtenances thereof" sufficient to grant Defendant and his predecessors in title express easements over the access roads as against the government.  We have already noted that unless a public grant

14

explicitly conveys property, we will construe the grant in favor of the government. Abrecht, 831 U.S. at 198. More importantly, access easements amounting to property interests were not necessary for the use and enjoyment of the land, because, as we previously concluded in Jenks I, Defendant's predecessors in title had an implied license to use public lands for "unimpeded access to their property." Jenks, 22 F.3d at 1515.

Accordingly, the district court's injunction prohibiting Defendant's use of the access roads is DISSOLVED. The district court's judgment is AFFIRMED IN PART and VACATED IN PART. The cause is hereby REMANDED to the district court for further proceedings consistent with this opinion.