**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 26 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

DIANA ROSE LUPPI,

        Defendant - Appellant.

No. 98-1475

(D. Colorado)

(D.C. No. 98-CR-21-Z)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

    On September 8, 1998, Diana Rose Luppi was convicted of using United States Forest Service roads without a special use authorization, in violation of 16

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. § 551; 43 U.S.C. § 1761; and 36 C.F.R. §§ 251.50, 261.10(k), and 261.54(a). Luppi now appeals that conviction, and, for the reasons discussed below, we affirm.

**BACKGROUND**

In June 1995, Luppi purchased a parcel of land located near Pagosa Springs, Colorado. The parcel is almost entirely surrounded by the San Juan National Forest. Private parcels such as the one purchased by Luppi, which are surrounded by federal land, are known as "inholdings." Federal law requires the Forest Service to provide inholders access to their property, provided that the inholder "compl[ies] with rules and regulations applicable to ingress and egress to or from the National Forest System." 16 U.S.C. § 3210(a).

The only access to Luppi's land is via Forest Development Road 629 and a short access road leading from Road 629. These roads are open to the public, including Luppi, during the summer months, but are closed during the winter to most traffic. When the snow begins to fall, Forest Service officials close and lock a gate on Road 629 below the access road leading to Luppi's property. Private property owners living above the locked gate are allowed to pass through the gate and travel on Road 629 and the access road during the winter, but only after they have executed an easement agreement with the Forest Service and have paid a fee.

The prior owners of Luppi's parcel had executed such an agreement, had paid the fee, and were allowed year-round access to the property.

In the spring of 1996, Forest Service officials notified Luppi that she had not yet transferred the easements obtained by the prior owner of the parcel into her name, and that she needed to do so in order to be allowed access to her property. Forest Service officials provided Luppi with a temporary permit to allow her a few weeks to get the paperwork done and pay the required fees. In April 1996, Luppi responded in writing by questioning the need for her to execute an easement agreement and pay the fees. The Forest Service responded to each of Luppi's questions in a letter dated May 6, 1996, and again explained the need for Luppi to obtain the required permit. Luppi sent the Forest Service a letter expressing her desire to obtain the required easements, and the Forest Service responded by sending Luppi the easement agreements for execution, and a bill for the 1996 fees (which, at that time, amounted to $176.00).

However, Luppi refused to sign the easement agreements or pay the fees. In December 1996, the Forest Service sent Luppi another letter, again urging her to sign the agreement and pay the fees. Enclosed with the letter was a new bill, which included a $40 late fee and approximately $10 of interest. Luppi returned the bill to the Forest Service marked "returned for cause and fraud," and refused to pay it or execute the agreements. I R. Doc. 27, Ex. 11. Luppi also sent the

Forest Service 12 pages of largely incomprehensible legal argument allegedly supporting her contention that she was not required to execute the agreement or pay the fees. Her argument appears to be rooted in a belief that the Forest Service does not actually own the lands that comprise the San Juan National Forest, and therefore cannot legally require anyone to execute an easement agreement or pay a fee for the privilege of traveling on Forest Service roads.

During the spring of 1997, Forest Service officials met with Luppi on several occasions to attempt to resolve her concerns, but were unsuccessful in persuading her to comply with regulations. The Forest Service offered to waive all late fees and interest, if Luppi would just pay the original fees and sign the documents. Luppi refused. In one final attempt to reach compromise, the Forest Service sent Luppi a letter informing her that there was a way for her to comply without having to actually sign an agreement herself, by joining a road users association which obtained easements on behalf of its members. Luppi did not respond to this suggestion.

Finally, in August 1997, after all efforts to reconcile the situation had failed, the Forest Service issued Luppi a citation for using National Forest roads without the required special use authorization. Even after issuing the citation, however, Forest Service officials continued to meet with Luppi to try to amicably resolve the situation.

Later that fall, the Forest Service sent Luppi another bill, accompanied by three more copies of a completed easement agreement for execution. This bill was for the 1997 fees, and was for $256.00. [1] Luppi paid this bill in late September, but still refused to execute the easement agreements.

In early 1998, the government obtained a three-count Information against Luppi. Count I charged her with using the access road, without authorization, between February 1997 and February 1998. Count II charged her with using Road 629 between April and May 1997. Count III charged her with using Road 629 between November 1997 and March 1998. These offenses are petty misdemeanors, and are punishable with a maximum of six months' imprisonment and a $5,000 fine per count. [2] However, the government has consistently declined to press for prison time. Luppi appeared pro se before a magistrate judge in Durango, Colorado, on January 15, 1998, and requested that her case be heard by a district judge rather than by a magistrate judge. She also requested a jury trial, but this request was denied. The magistrate judge also declined to appoint

---

[1]Some of the easement fees had been raised by the Forest Service in the interim.

[2]Although the maximum fine listed in 16 U.S.C. § 551 is $500, this limitation is superseded by 18 U.S.C. § 3571(b)(6) and (e). Because 16 U.S.C. § 551 does not specifically exempt offenses committed under it from the purview of 18 U.S.C. § 3571, the fine structure in § 3571 controls. See 18 U.S.C. § 3571(e). According to § 3571(b)(6), for petty offenses the maximum fine is $5,000.

counsel to represent Luppi, in view of the government's consistent position not to recommend any sentence involving prison time.

Prior to trial, Luppi, who has insisted upon proceeding pro se throughout this case despite repeated admonishments from the district court to obtain counsel, filed a motion seeking to have her case dismissed, arguing essentially that she had a common-law easement by necessity to traverse the Forest Service lands to reach her own parcel. The district court denied this motion, and set the case for trial.

At trial, the government called only three witnesses, each of whom testified that they had seen Luppi driving her vehicle on either the access road or on Road 629 itself during the months set forth in the indictment. One of the government's witnesses, Forest Service official Sonja Hoie, testified that the lands in question were indeed Forest Service lands. Luppi did not offer an opening statement or any witnesses of her own, and did not cross-examine the government's witnesses. Rather, Luppi offered a convoluted closing argument in which she again asserted her right to a common-law easement and again asserted that the lands in question were not Forest Service lands. At the close of her argument, Luppi moved the court for an acquittal.

Immediately following the close of Luppi's argument, the district court denied Luppi's motion for acquittal, and ruled from the bench that Luppi was

guilty of the offenses set forth in Counts I and III of the Information, but that the government had not proven Count II. The district court found "beyond a reasonable doubt that" the land in question was indeed Forest Service land "governed by the statutes and regulations of the United States of America." III Supp. R. at 99, 100. The district court also found that Forest Service officials had "clearly explained the statutes and the regulations" to Luppi, "were extremely patient in trying to communicate" with Luppi, and had "spent a year and a half trying to get her to comply cooperatively with the statutes and the regulations." Id. at 100, 101.

At sentencing, the district court imposed a $5,000 fine on Count III, and sentenced Luppi to one year of probation on Count I, with the probation subject to the following conditions: that Luppi execute the easement agreements and pay both past due and current fees, cooperate fully with the Forest Service, possess no firearms, pay a $20 special assessment, and observe all standard conditions of probation, one of which is that she is not allowed to leave the District of Colorado without permission.

Following sentencing, Luppi continued to refuse to pay the fine, fees, or execute the agreements. In addition, after having been granted permission to travel to Arizona for health reasons, Luppi did not return to Colorado on the date set by the probation officer and failed to appear at a probation hearing before the

district court. On May 21, 1999, the district court issued a bench warrant for Luppi's arrest.

Prior to leaving Colorado, Luppi filed a timely notice of appeal, and now appeals her conviction. [3] Her arguments on appeal are, in part, difficult to decipher, but as far as we can tell Luppi makes the following assertions: (1) the district court lacked subject matter jurisdiction over the case, because the land in question is not National Forest land under federal control; (2) the district court lacked personal jurisdiction over her; (3) she was denied her right to a trial by jury; (4) she was denied her right to effective assistance of counsel; (5) her sentence violated the Eighth Amendment's ban on excessive fines; (6) her right to travel was violated; (7) her rights under the Contracts Clause of the United States Constitution were violated; and (8) the Forest Service discriminated against her on the basis of her national origin, a "Citizen of the United States." [4] The

---

[3]Luppi has already been before this court on two occasions in connection with this case. After her motion for dismissal was denied, she filed an appeal with this court seeking review of that decision. We dismissed that appeal for lack of jurisdiction, because the order appealed from was not a final order. United States v. Luppi, No. 98-1292, slip op. (10th Cir. Sept. 14, 1998); I R. Doc. 57, Ex. 6; see also 28 U.S.C. § 1291. After her sentence was imposed following her conviction, she filed an "Emergency Motion for Writ of Mandamus" with this court, seeking a stay of her criminal sentence pending appeal. We denied Luppi's motion. United States v. Luppi, No. 98-1475, slip op. (10th Cir. Mar. 8, 1999).

[4]Luppi also argues that several of these issues are worthy of en banc consideration by this court. According to Fed. R. App. P. 35 and 10th Cir. R. 35, petitions for en banc consideration are properly filed with a petition for rehearing,
(continued...)

government argues that Luppi's claims are meritless, and in addition argues that we should dismiss Luppi's appeal based on the fugitive disentitlement doctrine.

## DISCUSSION

### I.    The Fugitive Disentitlement Doctrine

Generally, a "convicted defendant who has sought review [and who] escapes from the restraints placed upon him pursuant to the conviction" is not entitled to "call upon the resources of the Court for determination of his claims." Molinaro v. New Jersey, 396 U.S. 365, 366 (1970).  The government asks us to dismiss Luppi's appeal because she violated her probation, fled the judicial district, and failed to appear at a probation hearing.

However, there seems to be some question as to whether Luppi is indeed a fugitive.  On the one hand, Luppi failed to return to Colorado as scheduled, and failed to appear at the May 1999 probation hearing, resulting in a bench warrant for her arrest.  On the other hand, she was originally permitted to travel to

---

[4](...continued)
after a three-judge panel of this court has disposed of a party's appeal.

Notably, Luppi does not raise, in her appellate brief, one argument that she pressed before the district court:  that she possesses a common-law easement over the Forest Service lands.  Luppi wisely declines to press this argument on appeal, as it is foreclosed by our holding in United States v. Jenks, 129 F.3d 1348, 1353-55 (10th Cir. 1997).

Arizona lawfully, and she has filed a response, from Arizona, to the government's dismissal motion, arguing that she failed to appear at the May 1999 hearing because she never received notice of that hearing, and denying that she is a fugitive. Her response brief even included a return address in Arizona. Under the disputed factual circumstances of this particular case, it is more efficient to proceed to the merits of the appeal than to conduct proceedings to determine whether or not Luppi actually falls within the fugitive category.

## II.     The Merits of Luppi's Appeal

As far as we can tell, Luppi raises eight distinct arguments. Several of these claims, however, were not raised before the district court, and it is well settled that "a federal appellate court does not consider an issue not passed upon below." Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992) (quoting Singleton v. Wulff, 428 U.S. 106, 120 (1976)). Our review of the record reveals that Luppi failed to argue before the district court that (1) the court lacked personal jurisdiction over her; (2) her right to travel was violated; (3) her rights under the Contracts Clause were violated; and (4) she was discriminated against on the basis of her national origin. Therefore, we decline to consider these arguments.

We will consider the remaining issues in turn.

## A. Subject Matter Jurisdiction

First, Luppi claims that the district court did not have subject matter jurisdiction over her case because, she asserts, the land in question—the San Juan National Forest—is not owned by the federal government, but rather by the "people of Colorado." Appellant's Br. at 7. Luppi is mistaken. Before Colorado could become a state and join the Union, the state and its people had to "agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within said territory, and that the same shall be and remain at the sole and entire disposition of the United States." Colorado Enabling Act, § 4. Upon statehood, the federal government granted two out of every 36 sections of land to the state to hold in trust for educational purposes, id. § 7, but the remainder of the public domain remained under federal control when Colorado entered the Union in 1876.

Over the years, Congress has reserved portions of this unappropriated public domain land within Colorado for various specific federal purposes, such as military installations, Indian reservations, national parks, national monuments, wilderness areas, and national forests. In 1905, Congress created the San Juan National Forest "by proclamation . . . out of lands formerly public domain." United States v. Boone, 476 F.2d 276, 278 (10th Cir. 1973). Therefore, the San Juan National Forest is not now, and never has been, under the control of the

-11-

State of Colorado or any political subdivision thereof (such as Archuleta County). The San Juan National Forest has always been, and still is, under federal control. Congress has the constitutional power to manage federal properties and to regulate the activities which take place thereon.    See U.S. Const. art. IV, § 3, cl. 2; see also United States v. Jenks , 22 F.3d 1513, 1517 (10th Cir. 1994).   [5]

Therefore, the district court correctly determined that it had subject matter jurisdiction over Luppi's case.

**B.    Right to Jury Trial**

Although the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed," the Supreme Court has long held that "there is a

---

[5]Luppi's reliance on Utah Div. of State Lands v. United States, 482 U.S. 193 (1987), is misplaced. That case held that the title to Utah Lake, a navigable body of water within the State of Utah, had passed to the state upon Utah's admission to the Union in 1896, pursuant to the "equal footing doctrine." According to that doctrine, the states "hold title to the land under navigable waters within their boundaries." Id. at 196. The equal footing doctrine does not apply even to lands underlying non-navigable waters, see Koch v. Dep't of Interior, 47 F.3d 1015, 1019 (10th Cir. 1995), let alone to dry lands within a national forest, see United States v. Gardner, 107 F.3d 1314, 1318-19 (9th Cir. 1997). Therefore, Utah Div. of State Lands is inapplicable to this case.

category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision," Duncan v. Louisiana, 391 U.S. 145, 159 (1968). A "petty offense" to which the jury trial right presumptively does not attach is "[a]n offense carrying a maximum prison term of six months or less." Lewis v. United States, 518 U.S. 322, 326 (1996) (citing Blanton v. North Las Vegas, 489 U.S. 538, 542 (1989)). Even where a defendant is charged with multiple petty offenses which, taken cumulatively, could result in a sentence longer than six months, the Sixth Amendment right to a jury trial does not apply. See Lewis, 518 U.S. at 330 (stating that "[w]here the offenses charged are petty, and the deprivation of liberty exceeds six months only as a result of the aggregation of charges, the jury trial right does not apply").

Here, Luppi was charged with three petty counts, none of which carried a potential for more than six months' imprisonment. Therefore, the Sixth Amendment right to trial by jury did not apply to Luppi's case, and the district court properly refused to grant Luppi a jury trial.

### C. Right to Effective Assistance of Counsel

Although the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," the Supreme Court has held that "where no sentence of imprisonment

was imposed, a defendant charged with a misdemeanor had no constitutional right to counsel," Nichols v. United States, 511 U.S. 738, 743 (1994) (citing Scott v. Illinois, 440 U.S. 367 (1979)).  Here, Luppi was sentenced only to probation and a fine.  Therefore, the Sixth Amendment right to appointed counsel does not apply, and the district court properly declined to appoint counsel to represent Luppi.

### D.     Eighth Amendment

The Eighth Amendment provides that "excessive fines" shall not be imposed, and that "cruel and unusual punishments" shall not be inflicted.  Luppi maintains that her punishment, consisting of one year's probation and a $5,000 fine, was excessive and/or cruel and unusual punishment.  Luppi's punishment fell within statutory mandated boundaries, and as such is presumptively valid. See Rummel v. Estelle, 445 U.S. 263, 274 (1980);    United States v. Mejia-Mesa, 153 F.3d 925, 930 (9th Cir. 1998).  Absent some extenuating circumstance, a sentence which does not exceed the statutory maximum will not be overturned on Eighth Amendment grounds.    See Mejia-Mesa, 153 F.3d at 930.

Luppi argues only that the fine and probation "prevented the petitioner from 'legally' driving to her home without violating Sentencing terms, and made 'legal' access to petitioner's home contingent upon forced endorsement of contract."  Appellant's Br. at 5.  We do not think that these circumstances, which

are by nature present in every similar situation, are sufficient to overcome the presumption that a sentence within statutory guidelines is not offensive to the Eighth Amendment. The sentence imposed by the district court does not violate Luppi's Eighth Amendment rights.

## CONCLUSION

For the foregoing reasons, the judgment and sentence of the district court are AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge