# CHARLESTON.

## BENNETT *et als.* v. BOOTH.

Submitted June 8, 1910. Decided February 6, 1912.

1. WATERS AND WATER COURSES—*Reservations—Easements.*

   If an owner of land erect a mill dam upon it for the purpose of operating a grist mill, and thereafter convey a portion of the

land including a part of the mill-pond, there is an implied
reservation of an easement upon the land granted, as ap-
purtenant to the grist mill.   (p. 266).

2.  COVENANTS—*General Warranty—Breach.*
    A covenant of general warranty of title is not broken by the
    existence of such an easement.   (p. 266).

3.  JUDICIAL SALES—*Rights and Liabilities of Purchaser.*
    A purchaser of land at a judicial sale is privy in estate with
    him who owned it at the time of sale, and takes the land sub-
    ject to its burdens.   (p. 267).

4.  EASEMENTS—*Embodiment.*
    An easement, appurtenant to land, is not lost by failure of
    the owner to use it for a period less than ten years. (p. 267).

Appeal from Circuit Court, Barbour County.

Bill by Arthur F. Bennett and another against F. M. Booth.
Decree for defendant, and complainants appeal.

*Affirmed*

*Ware & Viquesney* and *Wm. T. George,* for appellants.

*Warren B. Kittle* and *C. M. Murphy,* for appellee.


WILLIAMS, JUDGE:

Arthur F. Bennett and Lloyd J. Booth filed their bill in the
circuit court of Barbour county praying for a mandatory in-
junction to compel defendant to remove a mill dam, located on
his own land across a stream of water flowing through plaintiffs'
land, causing the overflow of plaintiffs land above.   The case was
heard upon pleadings and proofs, on the 6th of October, 1909,
and the temporary injunction, which had been previously award-
ed, was dissolved, and plaintiffs' bill dismissed.   They have
appealed.

Defendant claims the right to flood plaintiffs' land, as a right
appurtenant to his own land.   Frederick Booth, grandfather of
defendant and one of the plaintiffs, was originally the owner of
both tracts of land, and while such owner, he erected a grist mill
and built a dam on a portion of the tract.   Sometime thereafter,
in the year 1887, he conveyed to his son, Jeremiah Booth, by
deed with general warranty of title, 102 acres which is the land
now owned by plaintiffs, and a portion of which is submerged by

70 W. Va.

the mill-pond. Plaintiffs purchased the land at a judicial sale, made and confirmed, in 1906, in a suit by J. N. B. Crim against Jeremiah Booth, and others. About the year 1901 a part of the forebay washed away and it was not repaired until six or seven years thereafter, which was a short time prior to the bringing of this suit, and after Frederick Booth had conveyed the land with the mill on it to his son William, who, in turn, conveyed it to his son, the defendant.

One of the plaintiffs is a son, and the other a son-in-law, of Jeremiah Booth, the former owner of the land burdened with the easement, if indeed it is so burdened, and notwithstanding the dam was out of repair and the mill not in use, at the time of their purchase, still they took the land subject to whatever burden, if any, existed upon it in the hands of Jeremiah Booth to whose title they succeeded. By their purchase they became his privies in estate. 24 Cyc. 62; *Hurxthal* v. *Boom Co.,* 53 W. Va. 87; *Long* v. *Weller,* 29 Grat. 347.

When a landowner has created a servitude upon one portion of his land for the benefit of another portion, and conveys the servient part, there is an implied reservation of the easement, if it is essential to the use and enjoyment of the land reserved, and such right passes with the dominant estate, as appurtenant thereto. Nor does the existence of such an easement constitute a breach of the covenant of general warranty, if the easement is so open and apparent that the contracting parties are presumed to have contracted with reference to the condition in which the land then was, and it is not to be supposed that the purchaser agreed to pay any more for the land than he thought it was worth with the burden on it. Such a burden has been held not to constitute a breach of covenant against encumbrances: *Kutz* v. *McCune,* 22 Wis. 628, 99 Am. Dec. 85; Devlin on Deeds, sec. 908; *Prescott* v. *Williams,* 5 Mete.. 429, 39 Am. Dec. 688. If not a breach of covenant against encumbrances, *a fortiori* it is not a breach of a covenant of general warranty, which relates more particularly to the title than it does to encumbrances.

The decisions of other states are not uniform upon the doctrine of an implied reservation in favor of a grantor, but we think the rule, as we have stated it, is supported by the better considered cases, as well as by the more modern text writers on the subject.

See the following: 10 A. & E. E. L. 427; *Prescott* v. *Williams, supra; Cary* v. *Daniels,* 49 Mass. 466; *Seibert* v. *Levan,* 8 Pa. St. 383; *Kitz* v. *McCune, supra;* Jones on Easements, sec. 136; *Lampman* v. *Milks,* 21 N. Y. 505; *Mason* v. *Horton,* 67 Vt. 266.

A mill-dam is essential to a water power grist mill, without it the mill, which is a part of the realty on which it stands, would be useless. Plaintiffs' predecessor in title knew that it backed the water upon his land, it had done so for many years before he bought it, and he is presumed to have taken the land subject to a continuation of that condition. Plaintiffs, his privies in estate, took the land subject to the burden upon it as appurtenant to the other tract of land with the mill on it, and the mill, together with the appurtenant easement, passed to defendant.

The fact that the mill and dam were in a dilapidated condition at the time plaintiffs purchased, does not affect the case. Defendant's right was appurtenant to the dominant land and passed with it, it was such a right as could be lost only by adverse possession by the owner of the servient land, for such length of time as would bar an action of ejectment. *Clark* v. *Beard,* 69 W. Va. 313, 71 S. E. 188.

Appellants contend that defendant, in repairing the dam, raised it higher than it was before, and caused more of his land to be overflowed. This, of course, he could not lawfully do. But their contention, in this regard, is not supported by the evidence. Two or three of their own witnesses testified that the dam was about as high as it was before, and some of the defendant's witnesses say that it is no higher than it was at first. We will affirm the decree.

*Affirmed*