375 S.E.2d 595

**William L. MYERS and Mary A. Myers**

v.

**Ernest Paul STICKLEY, Jr., Margaret Louise Stickley, J. Steven Zollner, Karen Zollner, James P. Riggleman, Nancy K. Riggleman, Gregory Cookerly, Pam Cookerly, Curlee Miller, and Deborah Miller**

v.

**Paul DETRICK and Vivian Detrick.**

**No. 18127.**

Supreme Court of Appeal of West Virginia.

Nov. 21, 1988.

Joan L. Casale, Rice, Douglass & Shingleton, Martinsburg, for William L. Myers and Mary A. Myers.

V. Alan Riley, Keyser, for appellees.

PER CURIAM:

William L. Myers and Mary A. Myers appeal from the July 17, 1986 order of the Circuit Court of Mineral County that reformed and corrected their deed along with four other deeds to a 10 acre tract of land known as Detrick Acres Subdivision. As a result of the reformation the Myers' property was reduced from two acres to 1.183 acres and a road through their property was determined to be an easement of necessity.

Prior to 1977, Paul and Vivian Detrick decided to develop a 10 acre tract of land located in Mineral County. The Detricks had the tract surveyed and a subdivision plat prepared.[1] The plat prepared by Charles Logsdon used an old logging road, rather than the existing farm dirt road as the right-of-way and divided the tract into two major sections. Mr. Logsdon utilized the old logging road in order to achieve equal acreage lots with four lots of one acre each in the northern section, Section 1 and three lots of two acres each in the southern section, Section 2.[2]

The Detricks sold the tract through the following deeds:

1. By deed dated October 26, 1977, recorded in Deed Book 208 at page 270 in the Office of the Clerk of the County Commission of Mineral County, West Virginia, Lots 1 and 2 of Section 1, containing 2 acres, were conveyed to Steven Day et ux, predecessors in interest to the Myers.

2. By deed dated October 26, 1977, recorded in Deed Book 207 at page 733 in said Clerk's office, Lots 3 and 4 of Section 1, containing 2 acres, were conveyed to appellees, Earnest Stickley and Margaret Louise Melvin.

3. By deed dated November 17, 1977, recorded in Deed Book 220 at page 655 in said Clerk's office, Lot 5 of Section 2, containing 2 acres, was conveyed to appellees, Gregory and Pam Cookerly.

4. By deed dated December 14, 1977, recorded in Deed Book 208 at page 493 in said Clerk's office, Lot 6 of Section 2, containing 2 acres, was conveyed to appellee, J. Stephen Zollner and Patricia Sulser, and subsequently re-conveyed by deed, recorded in Deed Book 220 at page 274 in said Clerk's office, to appellees, J. Stephen and Karen Zollner.

5. By deed dated November 9, 1977, recorded in Deed Book 211 at page 654 in said Clerk's office, Lot 7 of Section 2, containing 1.71 acres, was conveyed to appellees James and Nancy Riggleman.[3]

The descriptions in each deed and the plat attached to each deed all correspond and the immediate grantees paid approximately $4,000 for each 2 acre section of the tract.

Mr. Detrick testified that he showed each of the immediate grantees where he thought the land was located. In showing the property, Mr. Detrick did not use the old logging road as the right-of-way-dividing line; rather, he used the existing farm dirt road that is located some distance north of the old logging road. None of the immediate grantees had their property surveyed and Mr. Zollner testified that he relied on the incorrect information furnished by Mr. Detrick. The other appellees indicated that they agreed with the testimony of Mr. Zollner. Appellees, Stickleys, Rigglemans, and Zollners, built homes or located a trailer on their tracts according to the incorrect information furnished by Mr. Detrick.

By deed dated July 6, 1979 recorded in Deed Book 216 at page 227, in said Clerk's office, Lots 1 and 2 were conveyed by the Days to appellees, Curlee L. Miller and Deborah J. Miller, the immediate predecessors in interest of the Myers.

---

1. There is conflicting evidence over who prepared the original plat. The plat prepared by Charles Logsdon, a licensed West Virginia surveyor, was attached to each of the five deeds granted by the Detricks for various sections of the tract. The record does not indicate who monumented the survey. Both Mr. Logsdon and Mr. Detrick denied that he monumented the land.

2. Mr. Logsdon explained his use of the logging road in a letter dated October 16, 1977 to Mr. Detrick. Mr. Detrick denied receiving the letter but also admitted his memory was not clear.

3. The area of the old logging road, the plat right-of-way, was taken off Lot 7 thereby reducing Lot 7 to 1.71 acres.

In June or July 1981, Kennis F. Snyder, a licensed West Virginia land surveyor, performed a survey for the Millers. The survey found that the plat attached to the deeds did not correspond to the boundary lines observed by the appellees.[4] Mr. Snyder monumented Lots 1 and 2 for the Millers. Mr. Snyder notified the other property owners of his findings and described how the property boundary lines differed from those shown by Mr. Detrick. The appellees did not change their living arrangements or land claims as a result of the information.[5]

By general warranty deed dated March 10, 1983, recorded in Deed Book 231 at page 554 in said Clerk's office, the Millers conveyed to the Myers, the appellants, Lots 1 and 2 of Detrick Acres Subdivision. No evidence was presented concerning the information, if any, provided by the Millers to the Myers about the property line dispute.

Less than one year after purchasing the real property the Myers decided to build a garage, and they contacted Mr. Snyder to survey their property to locate the garage properly. Mr. Snyder informed the Myers of his previous survey results and showed them the deed property lines and remonumented the Myers' property.

Because the dirt farm road, incorrectly used as a right-of-way, was wholly within the Myers' property, the Myers instituted suit in 1984 to resolve the boundary dispute and for an injunction to stop the trespass.

The Millers, the immediate predecessors of the Myers, have moved out of state and, except for one letter, have not participated in this action. The other appellees brought in the Detricks as third party defendants.

The Myers filed a motion for a partial summary judgment concerning the property boundary lines. During a July 25, 1985 evidentiary hearing, the appellees, Stickleys, Zollners, Cookerlys and Rigglemans, requested the case to be considered in equi-ty. The court below denied the Myers' motion and took the appellees' motion for equitable relief under advisement, pending his view of the premises taken on August 14, 1985.

On July 17, 1986, the circuit court entered an order holding that the existing road constituted an easement of necessity and was to remain in tact for use of all parties for ingress and egress and further ordered that the lot boundary lines be redrawn to reflect the reality of land use.[6] As a result of the court's re-drawing, the Myers lost the flat part of their land and their total acreage was reduced from 2 to 1.183 acres.

On appeal to this Court the Myers argue that the circuit court erred in reforming their deed and in declaring the existing dirt road to be an easement of necessity. For the reasons set forth below, we agree and reverse the circuit court.

In equity a court can reform a deed on the grounds of mutual mistake provided the rights of an innocent purchaser for value are not prejudiced. In Syllabus Point 2, *Johnston v. Terry*, 128 W.Va. 94, 36 S.E.2d 489 (1946), we stated:

> Reformation of a deed or other writing by a court of equity on the ground of a mutual mistake of the parties, or a mistake of the scrivener, will not be decreed where to do so would prejudice the right of an innocent purchaser for value of the property covered by the deed sought to be reformed.

In the present case, the following two genuine issues of material fact needed to be clarified before the deeds could be reformed: (1) Was there a mutual mistake of the parties? (2) Were the Myers innocent purchasers for value?

The requirement of mutuality means that the mistake must have been participated in by both parties. Syllabus Point 2, *Robinson v. Braiden*, 44 W.Va. 183, 28 S.E. 798

---

**4.** Lowell Chapman, a licensed West Virginia surveyor, who testified for the appellees confirmed the findings of Mr. Snyder.

**5.** Mr. Zollner completed building his house which according to the plat was located entirely on the property of the Stickleys.

**6.** The new plat that was adopted by the circuit court, was submitted by Mr. Chapman, the surveyor hired by the appellees, who testified that he attempted to equitably redefine the boundaries.

(1897). The record contains no evidence that the Myers participated in the mistake. The only evidence presented concerning the participation of the Days, predecessors in interest to the Myers, was Mr. Detrick's testimony that he showed everyone where he thought the land was located.

On appeal the Myers assert that they are innocent purchasers for value and thus their deed cannot be reformed. Neither the Myers nor their immediate grantors, the Millers, testified. The deed granted by the Millers to the Myers stated that the consideration was $68,000 and gave no indication of the boundary dispute. In Syllabus Point 2, *Stickley v. Thorn*, 87 W.Va. 673, 106 S.E. 240 (1921) we stated:

> A purchaser of land who has knowledge of a mistake in the deed of his grantor, and of the true intent of design thereof, is not a bona fide purchaser for value, and stands in no better position than the original parties. The deed may be reformed as to him.

In this present case, the circuit court failed to inquire into two genuine issues of material fact and thus the judgment is without evidence to support the reformation of the deeds.[7]

The trial court also declared the existing farm road an easement of necessity. In Syllabus Point 3, *Stuart v. Lake Washington Realty Corporation*, 141 W.Va. 627, 92 S.E.2d 891 (1956) we stated:

> "To raise an implied reservation or grant of an easement the existing servitude must at the time of the deed be apparent, continuous and strictly necessary." Point 1, Syllabus, *Miller v. Skaggs*, 79 W.Va. 645, [91 S.E. 536 (1917)].

In Syllabus Point 1, *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976) we stated: "The burden of proving an easement rests on the party claiming such right and must be established by clear and convincing proof."

In the present case, the evidence presented by the appellees is not clear and convincing that at the time of the deed dated October 26, 1977, to the Days, the dirt farm road constituted an apparent, continuous and necessary reservation. The record does not show that the reservation was apparent because the tract, according to the plat attached to each deed, had a right-of-way in the old logging road. The record does not show that the reservation was strictly necessary, although there was testimony that in 1985 the farm road was in better condition and more convenient than the logging road right-of-way. In Syllabus Point 4, *Miller v. Skaggs*, 79 W.Va. 645, 91 S.E. 536 (1917), we stated:

> The rule of strict necessity applicable to an implied reservation or grant of an easement is not limited to one of absolute necessity, but to reasonable necessity, as distinguished from mere convenience.

We believe that the appellees failed to establish that the existing farm road constituted an apparent and necessary easement at the time of the deed.

In Syllabus Point 7, *Johnston v. Terry*, 128 W.Va. 94, 36 S.E.2d 489 (1946), we stated:

> A finding of a trial court on a question of fact will not be disturbed by this Court, except where such finding is contrary to the plain preponderance of the evidence, or is without evidence to support it.

Because the July 17, 1986 order of the circuit court is not supported by a record demonstrating the material facts necessary to clarify the requirements needed to reform the deeds and because the lower court's determination of an easement of necessity is not supported by clear and convincing proof, the judgment is reversed, and this case is remanded for further development consistent with the principles set forth herein.

**REVERSED AND REMANDED.**

---

7. If the trial court determines that it can reform the deeds, facts must be developed to justify the reformation. Without substantial justification, reformation should be limited to that strictly necessary to assure that the homes of the parties are located on their own land, with appropriate reimbursement for any land taken.