537 S.E.2d 317

Aubrey C. ROBERTSON, Charles D. Robertson and William B. Robertson Plaintiffs Below, Appellants,

v.

B A MULLICAN LUMBER & MANUFACTURING COMPANY, L.P., a Delaware Partnership, Defendant Below, Appellee.

No. 26840.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2000.

Decided April 25, 2000.

Concurring and Dissenting Opinion of Justice McGraw Oct. 20, 2000.

Larry L. Skeen, Esquire, Skeen and Skeen, Ripley, West Virginia, Attorney for Appellants.

William S. Winfrey, II, Esquire, Princeton, West Virginia, Attorney for Appellee.

PER CURIAM:

This case is before the Court from the appeal of Aubrey Robertson, Charles D. Robertson and William B. Robertson from the April 15, 1999, final order of the Circuit Court of Mercer County, wherein the lower court, following a bench trial, concluded that

the Appellee, B A Mullican Lumber & Manufacturing Company, L.P, proved by "clear and convincing evidence that an easement was created through implication in 1991 when Ethyl Broyles conveyed to the . . . [Appellants] the land upon which the roadway existed." The Appellants contend that the trial court erred:[1] 1) in finding that an easement by implication was created by Ethel Broyles at the time she conveyed to the Appellants the land upon which the easement existed; and 2) in concluding that the implied easement could be used for timbering purposes. Based upon a review of the record, the parties' briefs and arguments, as well as all other matters submitted before this Court, we affirm the lower court's decision.

## I. FACTS

At the center of this controversy is an old private roadway (also referred to as the "existing roadway") located on the Appellants' property parallel to the Appellee's property. This roadway is used to access a public road. Additionally, the existing roadway was used for timbering in the 1950's. The Appellants also used the existing roadway for timbering purposes after the instant lawsuit was filed.

The most recent common predecessor in title to both the Appellee and the Appellants was Ethel Broyles. Ethel Broyles and her husband, Bernard, acquired their original tract of land from Bessie Dunn Morgan in 1946 (referred to as "the Dunn tract").[2] There was no roadway located on the Dunn tract to access the public road. When the Broyles' acquired the Dunn tract, they used the existing roadway that crossed the property owned by M.O. Robertson, Ethel Broyles' brother. The Appellants could not identify any other way that Ethel Broyles had to ingress and egress her property. In 1971, M.O. Robertson died and devised the tract of land containing the roadway to Ethel Broyles.

Ethel Broyles, in turn, conveyed the tract of land upon which the existing roadway is located to the Appellants in 1991, without consideration. She made no reservation of an easement or right-of-way to and from her remaining property at the time of the conveyance, although it was apparent at the time that her only access to and from her home was across the existing roadway. From 1991 until her death on September 7, 1992, Ethel Broyles continued to travel the existing roadway, according to the testimony of Aubrey Robertson and Gordon Robertson. Upon her death, Ethel Broyles devised the Dunn, Fortner, and Caldwell tracts to the three sisters of her late husband, Bernard. The sisters subsequently conveyed the land to the Appellee's immediate predecessor in title.

## II. DISCUSSION

■ The issues raised by the Appellants focus on whether the trial court's factual findings that an easement was created through implication at the time of the conveyance of the property to the Appellants and that the easement could be used for timbering purposes were supported by the evidence. The deed demonstrates that there was no express reservation of an easement by Ethel Broyles. The Appellants assert that the evidence does not support the Appellee's right to use such road through an implied easement. Moreover, the Appellants maintain that the evidence does not support the trial court's finding that an intended usage of the implied easement was timbering operations. The Appellee argues to the contrary.

■ This Court has previously held that

[i]n reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are

---

**1.** Actually, the five alleged errors assigned by the Appellant are redundant. The Appellant does not even argue the last assigned error, which is deemed by this Court to be waived. *See* Syl. Pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981). ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."). Consequently, the remaining assignments of error have been combined into the two above-mentioned errors which will be addressed by this Court.

**2.** Subsequently, the Broyles acquired two additional tracts known as the Fortner and the Caldwell tracts.

reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Public Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

Further, we have stated that

[a]ppellate oversight is therefore deferential, and we review the trial court's findings of fact following a bench trial, including mixed fact/law findings, under the clearly erroneous standard. If the trial court makes no findings or applies the wrong legal standard, however, no deference attaches to such an application. Of course, if the trial court's findings of fact are not clearly erroneous and the correct legal standard is applied, its ultimate ruling will be affirmed as a matter of law.

*Phillips v. Fox*, 193 W.Va. 657, 662, 458 S.E.2d 327, 332 (1995) (footnote omitted).

■ In syllabus point two of *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 92 S.E.2d 891 (1956), this Court addressed the requirements for an implied reservation of an easement when we held that:

The general rule is that there is no implied reservation of an easement when an owner conveys a part of his land over which he has previously exercised a privilege for the benefit of the land which he retains unless the burden upon the land conveyed is apparent, continuous and necessary for the enjoyment of the land retained.

*See* Syl. Pt. 2, *Myers v. Stickley*, 180 W.Va. 124, 375 S.E.2d 595 (1988).

In the instant case, the testimony of Aubrey Robertson and Gordon Robertson indicated that the roadway used by Ethel Broyles was her only means of ingress and egress from her home to the public road. The evidence also indicated that Ethel Broyles' use of the roadway was as necessary, apparent and continuous after she conveyed the parcel of property upon which the roadway existed to the Appellants as it was before the conveyance. Thus, the trial court was not clearly erroneous in determining that Ethel Broyles impliedly reserved an easement across the Appellants' property at the time she conveyed the property to them. The evidence also supported the trial court's ruling that the existing roadway could be used for the Appellee's timbering operations.

Finally, it is significant to note that the lower court ruled that "the easement consists only of this roadway, which cannot be expanded or widened." Moreover, the trial court opined that the Appellee "has no right to modify the existing easement or create an unreasonable burden on the ... [Appellants'] servient estate." Accordingly, if the Appellee abuses these limitations of the implied easement or if the Appellee "create[s] an unreasonable burden" on the Appellants' property, nothing precludes the Appellants from seeking damages from the Appellee.

The decision of the circuit court is hereby affirmed.

Affirmed.

McGRAW, Justice, concurring in part, and dissenting in part:

(Filed Oct. 20, 2000)

I agree with the majority that the circuit court did not err in finding that an easement for ordinary purposes was created by implication in 1991; however, there is no factual or legal basis whatsoever supporting the lower court's determination that timbering operations were within the scope of that easement.

Importantly, we work from the premise that "the law does not favor the creation of easements by implied grant or reservation," *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 638, 92 S.E.2d 891, 898 (1956), and that "the use of land under an implied easement must be apparent when the severance of ownership occurs," *Id.* at 640, 92 S.E.2d at 899. Generally, "[t]he extent of an easement created by implication is *determine by the circumstances which existed at the time of conveyance* and gave rise to the implication," although consideration may also be given "to such uses as the facts and circumstances show were within the reasonable contemplation of the parties" at the time of severance. 25 Am.Jur.2d *Easements and*

**4**

*Licenses* § 91, at 663–64 (1996) (emphasis added). Here, there is no evidence that timbering was ongoing at the time of severance in 1991, or that the parties anticipated future logging; thus, the fact that timbering took place in the 1950s is irrelevant.

Consequently, I do not join the majority in concluding that there is support in the record for the circuit court's determination that timbering operations were within the scope of the implied easement created in this case.