Filed: November 29, 2001

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 01-1163
(CA-97-70-2)

United States of America,

Plaintiff - Appellee,

versus

Tommy A. Srnsky, et al.,

Defendants - Appellants.

O R D E R

The court further amends its opinion filed November 14 and amended November 20, 2001, as follows:

On page 9, second indented quotation, line 6 -- the two section symbols added in the earlier amending order are deleted.

On page 12, third full paragraph, line 2 -- the words "Organic Act, FLPMA, and ANILCA" are corrected to read "Organic Act, FLPMA, or ANILCA."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 01-1163
(CA-97-70-2)

United States of America,

Plaintiff - Appellee,

versus

Tommy A. Srnsky, et al.,

Defendants - Appellants.

O R D E R

The court amends its opinion filed November 14, 2001, as follows:

On page 9, second indented quotation, line 6 -- two section symbols are added before "1701-82."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

TOMMY A. SRNSKY; DAVID M.
SRNSKY,
Defendants-Appellants.

No. 01-1163

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CA-97-70-2)

Argued: September 26, 2001

Decided: November 14, 2001

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Luttig wrote the
opinion, in which Judge Williams and Judge Michael joined.

_____

COUNSEL

**ARGUED:** Roger J. Marzulla, MARZULLA & MARZULLA, Wash-
ington, D.C., for Appellants. David Jack Lazerwitz, Environment &
Natural Resources Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Nancie G.
Marzulla, MARZULLA & MARZULLA, Washington, D.C., for
Appellants. John C. Cruden, Acting Assistant Attorney General, Sean

H. Donahue, Environment & Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Patrick M. Flatley, United States Attorney, Wheeling, West Virginia; James B. Snow, Office of General Counsel, UNITED STATES DEPART-MENT OF AGRICULTURE, Washington, D.C., for Appellee.

_____

## OPINION

LUTTIG, Circuit Judge:

Tommy and David Srnsky appeal a district court order requiring them to apply for a Forest Service special use permit in order to use a 2.6-mile road through the Monongahela National Forest, which provides the sole access to their home. The district court held that the Srnskys have neither an express nor an implied easement to use the road. In reaching that conclusion, however, the district court failed to consider whether West Virginia common law implied a reservation of such an easement from the facts of the conveyance by which the United States took title to the surrounding land. For this reason, and because we conclude that, contrary to the government's arguments, federal law does not preempt such implied reservations, we vacate the district court's judgment and remand for further proceedings.

I.

In 1935, the Wilmoth family conveyed approximately 742.5 acres of land to the United States, expressly reserving to itself a 6.8-acre interior tract (the "inholding"). J.A. 195. The deed does not expressly reserve a right of access over what has become a national forest. The parties disagree on whether the Forest Service road, which today serves as the sole means of ingress and egress to the inholding, existed at the time of the conveyance. Compare J.A. 182-85 (declarations of Don Phares and David Srnsky), with Appellee's Br. at 15 n.5 (claiming appellants' expert acknowledges the road was built in 1962, J.A. 92).

By 1996, the Srnskys (the current owners of the inholding) completed construction of a home on the inholding. Apparently concerned

2

with the Srnskys' use of the road and the effects such use may have on the surrounding forest and on the buffalo clover, an endangered plant species, the Forest Service demanded that the Srnskys apply for a special use permit in order to continue using the road. When the Srnskys failed to comply with this demand, the Forest Service filed a complaint in district court, seeking to compel the Srnskys to apply for the permit. The government subsequently moved for and was granted summary judgment. J.A. 201-07. The district court rejected the Srnskys' claim that they have an implied easement but, in doing so, addressed only prescriptive easements and easements by necessity.

II.

Pivotal to this case is the sometimes elusive distinction between implied easements by way of necessity and implied easements from prior use (sometimes referred to as easements by implication). At times, courts loosely refer to both as implied reservations or implied easements. Here the distinction proves critical, because easements by implication, in contrast to easements by way of necessity, are not "extinguished merely because the reasonable necessity ceases to exist." Norken Corp. v. McGahan, 823 P.2d 622, 631 (Alaska 1991). For easements by implication, necessity must be established only at the time of conveyance.

Although West Virginia courts have sometimes used inconsistent terminology, see, e.g., Canei v. Culley, 374 S.E.2d 523, 524 (W. Va. 1988) ("A way of necessity is an easement founded on an implied grant or implied reservation.") (citation omitted), by focusing on the elements needed to establish each type of easement, we conclude that West Virginia recognizes both doctrines. In Berkeley Dev. Corp. v. Hutlzer, 229 S.E.2d 732 (W. Va. 1976), the court discussed easements by necessity. The court emphasized the necessity requirement and stated that once created, such an easement "cannot be extinguished so long as the necessity continues to exist." Id. at 851 (emphasis added).

In Stuart v. Lake Washington Realty Corp., 92 S.E.2d 891 (W. Va. 1956), the court dealt with easements by implication. The court described the three elements required for the creation of such easements: separation of title; "necessity that, before the separation takes place, the use which gives rise to the easement shall have been so

3

long continued and obvious or manifest as to show that it was meant to be permanent"; and "necessity that the easement be essential to the beneficial enjoyment of the land granted or retained." Id. at 898-99 (quoting 17 Am. Jur., Easements, § 34); see Miller v. Skaggs, 91 S.E. 536, 537-38 (W. Va. 1917); see also 7 Thompson, Real Property § 60.03(b)(4)(i), at 426 (1994). The court stressed that "there is no implied reservation of an easement . . . unless the burden upon the land conveyed is apparent, continuous and necessary for the enjoyment of the land retained." Stuart, 92 S.E.2d at 898 (emphasis added).

Unlike easements by necessity, these rights by implication "could be lost only by adverse possession by the owner of the servient land." Id. at 901 (quoting Bennett v. Booth, 73 S.E. 909, 910 (W. Va. 1912)). That is, continuing necessity is not required. See also Bennett, 73 S.E. at 909 (holding that such easements pass "with the dominant estate, as appurtenant thereto").

The Supreme Court of Appeals of West Virginia recently confirmed the continuing vitality of easements by implication. See Robertson v. B A Mullican Lumber & Mfg. Co., 537 S.E.2d 317 (W. Va. 2000). "The general rule is that there is no implied reservation of an easement . . . unless the burden upon the land conveyed is apparent, continuous, and necessary for the enjoyment of the land." Id. at 319 (quoting Myers v. Stickley, 375 S.E.2d 595 (1988)). Because easements by necessity do not require an apparent or continuous burden, the court could have referred only to an easement by implication.[1]

The Srnskys view their claim as a textbook example of an easement by implication. They contend that the Forest Service road is the same road that the Wilmoths had always used to access what became the inholding. They claim that the Wilmoths' use of the road was open, apparent, and necessary before the conveyance. The district court determined, however, that the Srnskys could not demonstrate necessity at the time of the conveyance, because 16 U.S.C. § 478, part

_____

[1] Other jurisdictions also recognize a distinction between easements by necessity and easements by implication. See, e.g., Davis v. Peacock, 991 P.2d 362, 367-68 (Idaho 1999); Griffith v. Eid, 573 N.W.2d 829, 831, 833-34 (N.D. 1998); Norken Corp. v. McGahan, 823 P.2d 622, 631 (Alaska 1991).

4

of the National Forest Service Organic Act of 1897 ( "Organic Act"), 16 U.S.C. §§ 473-82, 551, provided the Wilmoths a federal right of access. The plain language of the Organic Act, however, forecloses this conclusion.

Section 478 states:

> Nothing [in the Organic Act] shall be construed as prohibiting the egress or ingress of <u>actual settlers</u> residing within the boundaries of national forests, or from crossing the same to and from their property or homes; and such wagon roads and other improvements may be constructed thereon as may be necessary to reach their homes and to utilize their property under such rules and regulations as may be prescribed . . ..

16 U.S.C. § 478 (emphasis added). First, the statute does not appear to create rights of ingress or egress at all. Second, "actual settlers" has a well-established technical definition. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>New Orleans Pac. Ry. Co.</u>, 248 U.S. 507, 516 (1918) (describing an actual settler as someone who "had the qualifications named in the homestead law, <u>was expecting to acquire the title under that law</u>, [and] had placed on the land a habitable dwelling in which he and his family were living") (emphasis added). The Wilmoths, far from being "actual settlers," sold the surrounding land to the government.

Finally, with limited exceptions,[2] the Organic Act applies only to forests <u>reserved from public land</u>. As enacted, section 478 referred not to national forests but to "such reservations[from public land]." 30 Stat. 36 (1897). <u>See also</u> 16 U.S.C. § 475 (discussing "[a]ll public lands designated and reserved" under the Act). The United States purchased this land directly from a private party (the Wilmoths) under the Weeks Act, 36 Stat. 961 (1911), codified at 16 U.S.C. §§ 480, 500, 513-19, 521, 552, 563. J.A. 57-58. At the time of conveyance,

_____

[2] Section 480, which provides for state jurisdiction over persons within national forests, and section 551, a general grant of regulatory authority to the Secretary of Agriculture, apply to the land in question. Neither section has anything to do with this case, but because this is not completely obvious for section 551, we discuss it below.

5

the land surrounding the inholding was not public land. The Organic Act, we believe, simply has nothing to do with this case. See also 42 U.S. Op. Atty. Gen. 127, 127 n.1 (1962) (concluding that the Organic Act does not apply to land acquired under the Weeks Act).

The district court therefore disposed of the Srnskys' claim too quickly. Because the Organic Act does not apply, further factual development is required, unless, of course, federal law preempts existing easements.

III.

On appeal, the government does not seriously defend the district court's application of West Virginia law. Rather, it contends that whatever common law access rights the Srnskys may otherwise possess, the Organic Act; the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701-1784; and the Alaska National Interest Lands Conservation Act of 1980 (ANILCA), 16 U.S.C. §§ 3101-3233, preempt those rights. The government argues that

> [t]he fundamental point that the Srnskys fail to recognize, however, is that regardless of whatever state common law arguments they could assert to gain access to neighboring land, the neighboring land in this case is in a National Forest and access across that land is regulated as a matter of federal law by Congress pursuant to its authority under the Property Clause.

Appellee's Br. at 24. We need not decide, however, the extent of Congress' authority to abridge common law property rights, because we find that none of the statutes relied on by the government speaks to the issue.

As discussed above, the Organic Act, with the possible exception of section 551, does not apply. FLPMA also has no application to existing common law easements. Section 1761(a), selectively quoted by the government, authorizes the Secretary "to grant, issue, or renew rights of way," but does not authorize regulation of existing easements. Likewise, section 1764(c) states: "Rights-of-way shall be

6

granted, issued, or renewed pursuant to this subchapter under . . . regulations or stipulations . . . ." Nowhere does FLPMA address existing state law easements. Section 551 and ANILCA present slightly more complicated issues, and we address them in turn.

A.

Section 551, enacted in 1897 as part of the Organic Act, provides:

> The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests <u>which may have been set aside or which may be hereafter set aside under the provisions of section 471 of this title</u>, and which may be continued; and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction . …

16 U.S.C. § 551 (emphasis added). Section 471 allowed the President to reserve public land into the national forest system. And while the land surrounding the inholding entered the national forest system by operation of the Weeks Act, part of the Weeks Act, 16 U.S.C. § 521, arguably requires treating such land as if it had been reserved under section 471.

But even if we assume that section 551 applies to land acquired under the Weeks Act and that the general language of section 551 could be read to allow the Secretary to regulate state common law easements, we conclude that a provision of the Weeks Act, 16 U.S.C. § 518, precludes regulation of such easements under section 551. That section of the Weeks Act states, in relevant part:

> Such rights of way, easements, and reservations retained by the owner from whom the United States receives title, shall be subject to the rules and regulations prescribed by the Secretary of Agriculture for their occupation, use, operation, protection, and administration, <u>and such rules and regulations shall be expressed in and made part of the written</u>

7

> instrument conveying title to the lands to the United States; and the use, occupation, and operation of such rights of way, easements, and reservations shall be under, subject to, and in obedience with the rules and regulations so expressed.

16 U.S.C. § 518 (emphasis added).

Interestingly, the section does not foreclose implied reservations. But with unmistakable clarity, it _does_ require that any rules or regulations that the Secretary wishes to apply to easements reserved by the grantor must be "expressed in and made part of" the instrument of conveyance. To the extent, if any, that section 551, enacted in 1897, could be read to allow regulation of such easements, the more recent and specific statute, section 518, enacted in 1911 and amended in 1913, must prevail. Because no such regulations appear in the deed by which the United States took title, J.A. 48-51, section 551 does not apply to this case.

B.

As to ANILCA, there is a threshold question of whether the statute even applies to any land outside of Alaska. Even if the statute does apply in West Virginia, however, we find that it does not regulate common law easements such as the Srnskys claim. Finally, we find that the regulations promulgated under the statute do not, by their own terms, purport to regulate such easements.

1.

The government asserts (and the Srnskys tacitly concede) that ANILCA applies outside of Alaska. The government's entire treatment of this issue is contained within a footnote, which cites <u>Montana Wilderness Ass'n</u> v. <u>United States Forest Service</u>, 655 F.2d 951 (9th Cir. 1981). <u>See</u> Appellee's Br. at 7 n.1.

In isolation, subsection 1323(a), on which the government relies, appears to apply to all national forests (though, it is the only part of the entire statute that could plausibly apply outside of Alaska). It states:

8

> Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, the Secretary shall provide access to non-federally owned land within the boundaries of the <u>National Forest System</u> as the Secretary deems adequate to secure the owner the reasonable use and enjoyment thereof: Provided, That such owner comply with the rules and regulations applicable to ingress and egress to or from the <u>National Forest System</u>.

16 U.S.C. § 3210(a) (emphasis added). This subsection, however, must be read <u>in pari materia</u> with the next subsection. Subsection 1323(b) provides:

> Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of the Interior may prescribe, the Secretary shall provide such access to nonfederally owned land surrounded by <u>public lands</u> managed by the Secretary under the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1701-82) as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof: Provided, That such owner comply with rules and regulations applicable to access across <u>public lands</u>.

16 U.S.C. § 3210(b) (emphasis added). While the statute does not define the term "National Forest System," it does define "public lands" as certain public lands "situated in Alaska." 16 U.S.C. § 3102(3). This gives rise to a strong presumption that the nearly identical language in the immediately preceding subsection also applies only to land in Alaska. <u>See Montana Wilderness</u>, 655 F.2d at 953-55. And although the Ninth Circuit ultimately reached the opposite result, it did so only after consulting <u>post-enactment</u> legislative history. <u>See id</u>. at 957 (discussing <u>as decisive</u> legislative history for the Colorado Wilderness Act). But we need not decide the geographic scope of ANILCA today, however, because, as we discuss below, even if we accepted the contention that ANILCA applies outside of Alaska, we would still hold that it does not apply to the Srnskys' claimed easement.

9

2.

Section 1323(a) merely authorizes the Secretary to provide access to inholders (who may otherwise lack access); it does not purport to affect existing rights, and it does not mention state law. To say the very least, the statute lacks a clear statement of intent to preempt state law. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).

Undeterred, the government argues that under Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984), state law is preempted to the extent it actually conflicts with federal law. The government attempts to demonstrate a conflict by asserting that "Congress made clear in section 1323(a) of ANILCA that inholders shall be provided access across National Forest System lands, `Provided, That such owner comply with the rules and regulations applicable to ingress and egress to or from the National Forest System.'" Appellee's Br. at 31-32.

The only entities required to comply with the Secretary's rules and regulations, however, are those to whom the Secretary provides access. See 16 U.S.C. § 3210(a) ("[T]he Secretary shall provide access to nonfederally owned land . . . to secure the owner the reasonable use [of his land]: Provided, That such owner comply with the rules and regulations . . . .") (emphasis added). The government's interpretation reads "such" out of the statute. Because ANILCA applies only to those who lack rights of access under state law, we cannot say that, in this case, "it is impossible to comply with both state and federal law." Silkwood, 464 U.S. at 248. Nor does it appear that "state law stands as an obstacle to the accomplishment of the full purposes and objectives," id., of section 1323 of ANILCA, which appear to be ensuring access rights to inholders. There is no conflict between state and federal law, and, therefore, there is no preemption. See National Home Equity Mortgage Assoc. v. Face, 239 F.3d 633, 637 (4th Cir. 2001).

The government incorrectly believes that United States v. Jenks, 22 F.3d 1513 (10th Cir. 1994) (Jenks I), and Adams v. United States, 3 F.3d 1254 (9th Cir. 1993), support its preemption analysis. Jenks' predecessor in interest took title under the Homestead Act, see Jenks I, 22 F.3d at 1516; that is, he was an actual settler for purposes of the Organic Act. And while the court claimed to "hold that, regardless of

10

[Jenks'] patent or common law rights, he must apply for" a permit, id. at 1518, the facts do not support such a broad holding. The Tenth Circuit subsequently clarified its position in United States v. Jenks, 129 F.3d 1348 (10th Cir. 1997) (Jenks II), explaining the common law rights to which it had referred. Jenks had claimed that the land patents granted to his predecessor in interest contained certain implied easements. Id. at 1354. The court found that although a right of access had passed by implication, that right was not "a property interest known as an implied easement." Id. The court looked to the Homestead Act and found that Congress did not "intend to abrogate its right to regulate access." Id.**3**

The Srnskys' predecessors in interest, by contrast, did not take pursuant to a federal statute; rather they deeded part of their land to the federal government. We have only the deed to look to in determining the rights of the parties, and, absent federal legislation purporting to control interpretation of the deed, we are left with state law. See United States v. Polino, 131 F. Supp. 772, 774 (N.D.W. Va. 1955); see also North Dakota v. United States, 460 U.S. 300, 317-19 (1983) (assuming that state law generally governs federal land acquisitions, unless state law is "aberrant or hostile") (quoting United States v. Little Lake Misere Land Co., 412 U.S. 580, 596 (1973) (refusing to apply discriminatory and retroactive state law, but leaving open the possibility of applying that law if it served legitimate and important state interests)).

Moreover, the government's position has no logical stopping point. Nothing in the government's argument limits itself to implied easements. The statutory scheme, on the government's view, would wipe the National Forest System clean of any and all easements, implied or express. We would be reluctant to read such a result into an ambiguous statute. See, e.g., United States v. Security Indus. Bank, 459 U.S. 70, 82 (1982) (declining to construe a statute "`in a manner that could in turn call upon the Court to resolve difficult and sensitive questions

_____

**3** Adams offers the government no help for essentially the same reason. Like Jenks, the landowners in that case claimed that "an easement by implication or necessity was created when the United States granted the land to their predecessors." 3 F.3d at 1259. The court found that ANILCA and FLPMA applied to the right in question, preempting it. Id.

11

arising out of the guarantees of the' takings clause ") (quoting <u>NLRB</u> v. <u>Catholic Bishop of Chicago</u>, 440 U.S. 490, 507 (1979)); <u>cf.</u> <u>Medtronic</u>, 518 U.S. at 485 (discussing presumption against preemption). And we decline to read that result into ANILCA.

3.

Even if we were willing to read the statute as the government asks, the regulations themselves do not apply under the circumstances of this case. Section 251.110(b) specifically states that "[t]he regulations of this subpart do not affect . . . <u>the rights reserved in conveyances to the United States</u>." 36 C.F.R. § 251.110(b) (emphasis added). The government asks us to read "conveyances" to mean "instruments of conveyance," thereby arguably excluding rights reserved by implication. The more natural reading of "conveyances," however, suggests that it refers to acts, not documents. <u>See Black's Law Dictionary</u> (7th ed. 1999) (defining conveyance first as the "voluntary transfer of a right or of property," and fourth as the instrument "by which such a transfer occurs"). Under this reading, an implied reservation, such as the Srnskys claim, is a right reserved in a conveyance (though not expressed in the instrument of conveyance).

Section 251.114(f), which requires that applicants "demonstrate[] a lack of any existing rights or routes of access available <u>by deed or under State or common law</u>," strengthens our conclusion. 36 C.F.R. § 251.114(f) (emphasis added). First, the use of the word "deed" bolsters our reading of "conveyances" in section 251.110(b). The Secretary appreciates the distinction between a conveyance and the instrument of a conveyance. Second, the regulations clearly contemplate exemptions for individuals with preexisting access rights.

We therefore conclude that the district court cannot be affirmed on the grounds that the Organic Act, FLPMA, or ANILCA preempt whatever common law easement the Srnskys may have.

<u>CONCLUSION</u>

The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>

12