# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**June 21, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: S.P., G.P., and D.P.

**No. 16-0173** (Wood County 15-JA-78, 15-JA-79, and 15-JA-80)

## MEMORANDUM DECISION

Petitioner Mother M.P., by counsel Thomas B. Karr, appeals the Circuit Court of Wood County's January 20, 2016, order terminating her parental rights to three-year-old S.P., three-year-old G.P., and four-year-old D.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Robin S. Bonovitch, filed a response on behalf of the children also in support of the circuit court's order. The non-offending father, M.C., filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) finding that she injured the children; (2) denying her motion for an improvement period; and (3) denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2015, the DHHR filed an abuse and neglect petition against petitioner. In that petition, the DHHR alleged that D.P. arrived at the hospital with severe and extensive bruises "all over him." One bruise on the child's back matched the star shape on a belt later found in petitioner's home. The DHHR alleged that, upon investigating petitioner's home, police and a Child Protective Services ("CPS") worker found dog feces on the floor, "filthy" surfaces where the children ate, and a broken plate in the children's room. According to the DHHR, the CPS worker found that G.P. also showed bruising on her back and neck and that G.P. and S.P. were "filthy," had sagging dirty diapers, and were inappropriately dressed in clothes that did not fit them. The DHHR noted that petitioner blamed her nine-year-old nephew for the children's injuries, and she maintained that neither she nor her live-in boyfriend committed the physical abuse.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

In June and July of 2015, the circuit court held two adjudicatory hearings. During those hearings, the circuit court heard testimony that D.P. had extensive bruising to his entire body, including a bruise that matched a star-shaped belt found in petitioner's home; that petitioner admitted that she owned the belt; that G.P. had two three-to-four inch long bruises on his back; that G.P. and S.P. were in filthy condition in petitioner's home; that petitioner told the children's father immediately prior to taking D.P. to the hospital that she was going to get a psychological evaluation "before [she] went to prison"; that petitioner was uncooperative during the CPS investigation and threatened to "beat [the CPS worker's] ass" if she took the children from the home; and that petitioner admitted that she and her boyfriend had an argument when he came home intoxicated the night before CPS began its investigation. There was also testimony from an investigating officer that D.P. said "'him' did it" and pointed at petitioner's nine-year-old nephew. According to the officer, the nine-year-old told him that D.P. received his injuries by falling off a bed. Petitioner denied any responsibility for the children's bruises and continued to blame her nine-year-old nephew. At the conclusion of those hearings, the circuit court found that petitioner abused and neglected the children. In its adjudicatory order, the circuit court specifically found, "taking into consideration the totality of the circumstances, . . . [that petitioner] lost control and beat [D.P.] and [G.P.]"

In November of 2015, the circuit court held a dispositional hearing. Based on the evidence, the circuit court found that petitioner denied responsibility for any child abuse or neglect and that her home was unsafe for the children. The circuit court further found that there was no indication that petitioner would fully participate in an improvement period and that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Consequently, the circuit court terminated petitioner's parental rights to the children with no post-termination visitation. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law provides that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va.

325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner first argues that the circuit court erred in finding that she injured the children. West Virginia Code § 49-1-201 provides that an

> "[a]bused child" means a child whose health or welfare is being harmed or threatened by:
>
> > (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment;

Further, in Syllabus Point 3 of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995), this Court held that

> "'"'W.Va. Code [§] 49-6-2(c) [1980], requires the State Department of Welfare [now the Department of Human Services], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).' Syllabus Point 1, *West Virginia Department of Human Services v. Peggy F.*, 184 W.Va. 60, 399 S.E.2d 460 (1990)." Syllabus Point 1, *In re Beth*, 192 W.Va. 656, 453 S.E.2d 639 (1994).

This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996) (internal citations omitted); *see also Cramer v. W.Va. Dep't of Highways*, 180 W.Va. 97, 99 n. 1, 375 S.E.2d 568, 570 n.1 (1988) (explaining that the clear and convincing standard is "intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.").

In this case, while petitioner claims that no direct evidence supports the conclusion that she physically "beat" D.P. and G.P., we find that the DHHR satisfied its burden to prove abuse and neglect by clear and convincing proof. The circuit court heard testimony that D.P. and G.P. had severe bruises on their bodies, which included a bruise in the shape of a belt that petitioner admitted she owned. Petitioner informed the children's father immediately before D.P. went to the hospital that she was going to prison, which the finder of fact construed as a confession, and

petitioner demonstrated an uncooperative, angry, and aggressive attitude with the CPS worker during her investigation. Based on these circumstances, we find no error in the circuit court's determination that petitioner caused the bruises to D.P. and G.P.

Moreover, irrespective of who caused the physical injuries to the children, it is undisputed that the injuries occurred while petitioner supervised these children and that petitioner's home was unsuitable for them. West Virginia Code § 49-1-201 defines a "neglected child" as a child

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian[.]

Here, the DHHR satisfied its burden to prove that petitioner neglected her children. Assuming, arguendo, that the nine-year-old nephew caused the children's injuries as petitioner alleges, then it follows that petitioner failed to properly supervise her children, resulting in harm. She also failed to provide her children with proper shelter, clothing, and care as evidenced by the condition of her home and the children during the CPS investigation. For those reasons, the record on appeal supports the finding that petitioner abused and neglected her children. As such, we find no merit to petitioner's first assignment of error.

Next, petitioner asserts that the circuit court erred in denying her motion for an improvement period. West Virginia Code § 49-4-610 grants circuit courts discretion in ruling on motions for improvement periods. Further, these statutory provisions require a parent to prove by clear and convincing evidence that they are likely to fully participate in the same. We have also explained that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re: Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (*quoting In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). In support of her contention, petitioner claims to have acknowledged her failure to protect her children from their injuries and to be willing to fully comply with the appropriate services to protect them from further harm. However, petitioner failed to acknowledge that she committed domestic violence against her children, which was the primary abuse found by the circuit court in this matter, as explained above. Therefore, because petitioner failed to acknowledge the central problem in this case as determined by the circuit court, we find no error in the circuit court's denial of an improvement period under the circumstances of this case.

Petitioner's third assignment of error is that the circuit court erred in denying her post-termination visitation with the children. Post-termination visitation may be granted when, in the circuit court's discretion, it is in the children's best interests to do so. We have held that

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well[-]being and would be in the child's best interest.

Syl. Pt. 5, *In re Christine L.*, 194 W.Va. 446, 460 S.E.2d. 692 (1995). While petitioner argues that her emotional bond with the children necessitates post-termination visitation, an emotional bond is but one factor for a circuit court to consider when assessing the children's best interests. *See id*. Here, the circuit court found that it was "not in the best interest of the children to continue to have contact with their abuser." Given the evidence of petitioner's physical harm to the children while in her care, we find no abuse of discretion in the circuit court's denial of post-termination visitation.

For the foregoing reasons, we find no error in the circuit court's January 20, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: June 21, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II